TYSON, Judge,
Tommy Robinson, Jr., was charged, by information filed by the City of Abbeville, Alabama with driving under the influence of alcohol, contrary to Tit. 32-5A-191, Code of Alabama 1975, as amended, and also by separate information filed by the city with driving while his license was suspended, contrary to provisions of Tit. 32-6-19, Code of Alabama, 1975.
*156 Following a trial without a jury, before the circuit court, the appellant was found guilty as charged of the offense of DUI but the trial court granted his motion for judgment of acquittal as to the driving while his license was suspended charge. The trial court set fine at $500 as punishment.
I
The sole issue on appeal is whether or not the City of Abbeville, Alabama, presented sufficient evidence to sustain the appellant’s judgment of conviction for the offense of DUI, contrary to the provisions of § 32-5A-191, Code of Alabama, 1975, as adopted by the ordinance of the City of Abbeville, Alabama.
The City of Abbeville presented proper proof, through the city clerk, of the adoption of an ordinance which provided for the statute in question to constitute the ordinance with reference to DUI.
The city then presented the testimony of Abbeville Police Officer Bob Elliott who testified he was on duty on November 6, 1983 in the City of Abbeville when the following occurred:
“Q. On November the 6th, 1983, did you have an occasion to see the defendant, Tommy Robinson, Jr., within the city limits of the city of Abbeville?
“A. Yes, sir.
“Q. Where did you see him, please, sir?
“A. Over in Rock Hill.
“Q. Is that a subdivision of the City of Abbeville?
“A. Yes, sir.
“Q. Is that in the city limits?
“A. Yes, sir.
“Q. What was the occasion of you being in that area of the city of Abbeville?
“A. Well, I was reporting to the police station that they had a 10 50 on Kirkland Street.
“Q. What’s a 10 50?
“A. A wreck.
“Q. Okay.
“A. And the driver of the vehicle was trying to drive off and they give that direction of travel that he was headed.
“Q. Okay. You were investigating someone who left the scene of an accident?
“A. Yes, sir.
“Q. What was the defendant doing when you first saw him?
“A. Well, when I run by him he was in preparations of getting out from under the steering wheel of the car to get out over in Rock Hill.
“Q. What kind of car was it?
“A. It was a Pontiac. It was green.
“Q. What did you do when you first saw him?
“A. Well, when I first saw him I run by him and I had to turn around.
“Q. Okay. You were driving past him? “A. Yes, sir.
“Q. When you observed him?
“A. Yes, sir. By the time I got turned around and got up to where he was at, he done out and was standing in front of the vehicle.
“Q. What was he doing in front of the vehicle?
“A. He was attempting to let the hood up.
“Q. Did you notice anything about the vehicle?
“A. Yes, sir. It was boiling over. Like it was—
“Q. It was running hot?
“A. —running hot. Yes, sir.
“Q. Did you see steam?
“A. Yes, sir.
“Q. Did you notice anything about the vehicle?
“A. Yes, sir. The right front fender was damaged and it had a flat tire on the right front.
“Q. Okay. Did you observe anything about the defendant?
“A. Yes, sir. I noticed that his speech was slurred and to the best of my memory he might have been leaning up against the car attempting to let the hood up.
“Q. Did you smell anything?
*157 “A. Yes, sir. When I walked passed the car I could smell the strong odor of alcohol.
“Q. Deputy Elliott, in your career as a police officer and law enforcement official, have you had occasions to make arrests for alcohol related offenses?
“A. Yes, sir.
“Q. Such as—
“A. Public intoxication, DUI, just a number of them.
“Q. Do you have a judgment as to how many of these type arrests you have made?
“A. About fifty.
“Q. Over the course of your entire career as a police officer?
“A. Yes, sir.
“Q. Do you have a judgment as to whether convictions were obtained on arrests made by you on these alcohol related offenses?
“A. There might have been one or two.
“Q. That were convicted or were not convicted?
“A. Were not convicted.
“Q. Based on your observations of this defendant at the time you saw him attempting to let the hood up on this automobile, do you have a judgment as to whether he was under the influence of alcohol at that time?
“A. Yes, sir.
“Q. What is that judgment, please?
“A. That he was pretty well high.
“Q. You think he was under the influence of alcohol?
“A. Yes, sir.
“Q. What did you do after you got out of the car and went up to him?
“A. Well, I believe I asked him for his driver’s license.
“Q. Did he give you a driver’s license? “A. No, sir.
“Q. Did you subsequently cause an investigation to see if he had a license or not?
“A. No, sir, I knew that he didn’t have no license because I had stopped him on prior occasions driving while suspended.
“Q. Do you know whether his license was suspended on this occasion when you saw him?
“A. Yes, sir. Yes, sir. I run a check on them and they come back suspended.” (R. 4-7).
Following the conclusion of the State’s case the appellant made a motion for judgment of acquittal averring that the city had failed to prove a prima facie case. In ruling on this motion, the trial judge made the following determinations: (R. 18-20).
“MR. WOODHAM: Yes, sir. I think the evidence shows that when the officer first drove by he was getting out from under the — he said he opened the door— getting out. When he came back by he was in front of the hood. Then he stopped and turned around.
“THE COURT: Do you have anything else to say, Mr. Clenney?
“MR. CLENNY: No, sir.
“THE COURT: Mr. Clenny, although I agree with this case of Key versus Town of Kinsey, it sets forth some elements which have not been met in this case. I’m going to deny your motion. I think there is probably a distinction between proving that an automobile has been capable of operation or is capable or has been previously capable of operation. In this case we have, as Mr. Woodham said, a vehicle that was running hot which would indicate it had been operating. Whether in that situation it could be operated or not is not the same as in this case. In this case it was not proven at all that it had been operated. I’m going to deny your motion on the basis of this case.
“MR. WOODHAM: Okay.
“THE COURT: Do you have anything further?
“MR. WOODHAM: No, sir. The defense rests.
“THE COURT: Bring your client up.
“MR. WOODHAM: Judge, I would, just for the Record, move for a judgment of acquittal on the driving while license suspended case. If the Court finds that the *158 defendant was in actual physical control of the vehicle I don’t think it would be enough to justify conviction on the driving while suspended—
“THE COURT: I’m going to grant your motion on that case because under the Key versus Kinsey case it does talk about the previous cases before they amended the law whether you are just charged with driving while intoxicated or under the influence. In that case they had to actually see them driving. And I think that would be the same as the driving while license suspended or revoked. Under the DUI case, you don’t have to have actual driving. You can have under — in physical control which is what I think we have more here.
“I find the defendant guilty of driving under the influence. I grant the motion for judgment in his favor on the driving while license suspended or revoked.”
This case, admittedly, presents a very close question.
In Key v. Town of Kinsey, 424 So.2d 701 (Ala.Crim.App.1982), this court, speaking through Judge Barron, laid down the following criteria to establish the necessary elements to prove that a person was in physical control of a vehicle under the provisions of the Code of Alabama, § 32-5A-191.
“1. Active or constructive possession of the vehicle’s ignition key by the person charged or, in the alternative, proof that such a key is not required for the vehicle’s operation;
“2. Position of the person charged in the driver’s seat, behind the steering wheel, and in such condition that, except for the intoxication, he or she is physically capable of starting the engine and causing the vehicle to move;
“3. A vehicle that is operable to some extent.”
The appellant argues that the City of Abbeville failed to prove the essential elements as set forth in Key, supra. The City of Abbeville counters by citing to us the case of Spann v. State, 440 So.2d 1224 (Ala.Crim.App.1983) and insists that under Spann, supra, the key elements were here proven.
Specifically, the appellant is contending that the city failed to prove that he actually operated a vehicle or that he was in actual physical control of it. As pointed out by the findings of the circuit judge the motor of the vehicle in question was “running hot.” The appellant was seen alighting from the vehicle. He was standing by it and the odor of alcohol on his breath and person and his staggering was noticeable to the arresting officer.
Moreover, the officer in question pointed out that the vehicle could be started through the use of a “screw driver or knife or some sort of instrument like that to crank it”. (R. 10). It is true that the officer found no keys in the ignition in the automobile or on the person of this appellant. The officer also admitted on cross examination, “No, sir, I did not see him driving it.” (R. 9).
While proof may be lacking that the appellant actually drove the vehicle on the occasion in question, the evidence is sufficient and convicing that he was in actual physical control of it. Thus, the elements of proof necessary to establish actual physical control within the meaning of the cited cases were here present. Spann, supra and Hanners v. State, 461 So.2d 43 (Ala.Crim.App.1984) and authorities therein cited. See also Pace v. City of Montgomery, 455 So.2d 180 (Ala.Crim.App.1984); Annot. 93 A.L.R.3d 7 (1979).
For the reasons hereinabove stated, the judgment below is due to be and the same is, hereby, affirmed.
AFFIRMED.
All the Judges concur.